IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DESIREE EDWARDS,

    *Plaintiff,*

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    *Defendant.*

Case No. 14-2305-EFM

**MEMORANDUM AND ORDER**

Plaintiff Desiree Edwards seeks review of a final decision by Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income under Title XVI of the Social Security Act. Plaintiff alleges that the administrative law judge ("ALJ") erred in finding that she could return to her past work and by not affording controlling weight to her treating physician's opinion. Having reviewed the record, and as described below, the Court reverses and remands the order of the Commissioner.

**I.    Factual and Procedural Background**

Desiree Edwards was born on November 24, 1962. On April 11, 2011, Edwards applied for Supplemental Security Income alleging a disability beginning on October 10, 2002. Edwards alleged that she was unable to work because of attention deficit hyperactivity disorder

("ADHD"), post-traumatic stress disorder ("PTSD"), and bi-polar disorder. Her application was denied initially and upon reconsideration. Edwards then asked for a hearing before an ALJ.

ALJ John Keys conducted an administrative hearing on February 5, 2013. Edwards was represented by counsel at this hearing, and Edwards testified about her medical conditions. The ALJ also heard from a medical expert and a vocational expert.

On February 15, 2013, the ALJ issued his written decision, finding that Edwards had not engaged in substantial gainful activity since the alleged onset date. The ALJ found that Edwards suffered from bipolar disorder, PTSD, personality disorder (not otherwise specified), and a history of polysubstance abuse in remission. The ALJ found that Edwards' impairment or combination of impairments did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

The ALJ determined that Edwards had the residual functioning capacity ("RFC") "to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple repetitive tasks but no jobs involving safety operations requiring hypervigilance and the protection of others."[1] The ALJ then determined that Edwards was capable of performing her past relevant work as a fast food worker and cashier. Thus, the ALJ concluded that Edwards had not been under a disability from October 10, 2002, through the date of his decision.

Given the unfavorable result, Edwards requested reconsideration of the ALJ's decision from the Appeals Council. The Appeals Council denied Edward's request on June 3, 2014. Accordingly, the ALJ's February 2013 decision became the final decision of the Commissioner.

---

[1] ALJ Decision, Doc. 10-1, p. 14.

Edwards filed a complaint in the United States District Court for the District of Kansas. She seeks reversal of the ALJ's decision and either the grant of benefits or remand to the Commissioner for a new administrative hearing. Because Edwards has exhausted all administrative remedies available, this Court has jurisdiction to review the decision.

## II.     Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."[2]  The Court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[3]  "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[4]  The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[5]

An individual is under a disability only if he can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[6]  This impairment "must be severe enough that she is unable to perform her past relevant work, and

---

[2] 42 U.S.C. § 405(g).

[3] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[4] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. Jul. 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[5] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

[6] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[7]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[8] The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[9]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those severe impairments meets or equals a designated list of impairments.[10] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from his impairments."[11]

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his past relevant work or whether he can generally perform other work that exists

---

[7] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920 (2005)).

[8] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a).

[9] *Barkley*, 2010 WL 3001753, at *2.

[10] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[11] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

in the national economy, respectively.[12] The claimant bears the burden in steps one through four to prove a disability that prevents performance of his past relevant work.[13] The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged impairments, the claimant could perform other work in the national economy.[14]

### III.   Analysis

Plaintiff asserts two arguments. First, Plaintiff contends that the ALJ erred by finding that she could return to her past relevant work and further erred by relying on a vocational expert's testimony because that expert testified on an inaccurate hypothetical. Next, Plaintiff asserts that the ALJ erred by not affording controlling weight to the opinion of her treating psychiatrist or alternatively by not giving deference to the treating psychiatrist.

**A.  Past Relevant Work**

Plaintiff argues that the ALJ erred in finding that she could return to her past relevant work of fast food worker and cashier. When making a determination that an individual can perform a past relevant job, an ALJ must include specific findings of fact relating to (1) the individual's RFC, (2) the physical and mental demands of the past job, and that (3) the individual's RFC would allow a return to her previous occupation.[15] In this case, before determining Plaintiff's RFC, the ALJ made the determination that Plaintiff had moderate difficulties in social functioning and moderate difficulties with concentration, persistence, or pace. In determining Plaintiff's RFC, the ALJ found that Plaintiff was limited to simple,

---

[12] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[13] *Lax*, 489 F.3d at 1084.

[14] *Id*.

[15] Soc. Sec. Ruling 86-62, 1982 WL 31386, at *4 (Jan. 1, 1982).

repetitive tasks and could not perform a job that involved safety operations requiring hypervigilance or the protection of others. The RFC did not explicitly note any limitations with regard to mental or social functioning.

Plaintiff contends that the jobs of fast food worker and cashier require a higher reasoning level than simple repetitive tasks. A fast food worker's job requires a reasoning level of two while a cashier's position requires a reasoning level of three.[16] Level two requires "commonsense understanding to carry out detailed but uninvolved written or oral instructions,"[17] while level three requires the ability to "carry out instructions furnished in written, oral, or diagrammatic form" and the ability to "[d]eal with problems involving several concrete variables."[18] Here, the ALJ found that Plaintiff only had the ability to carry out simple repetitive tasks. Both levels two and three appear to go beyond simple repetitive tasks. The Court notes, however, that these jobs could be an appropriate finding, and the fact that these positions require reasoning levels of two and three is not determinative.

There is, however, another issue. Both the jobs of cashier and fast food worker require direct and frequent interaction with the public.[19] The ALJ noted that Plaintiff had moderate difficulties with social functioning, but this limitation does not appear to be accounted for in the finding that Plaintiff could return to her past relevant work. The Court notes that Dr. Glassmire, the impartial medical expert, testified that Plaintiff's mental impairments resulted in moderate difficulties in maintaining social functioning and moderate difficulties with concentration,

---

[16] *See* Dictionary of Occupational Titles §§ 311.472-010 (fast food worker), 211.462-010 (cashier II).

[17] *See* Dictionary of Occupational Titles, Appendix C.

[18] *Id.*

[19] *See* Dictionary of Occupational Titles § 311.472-010 (stating that the job requires serving customers of fast food restaurant); § 211.462-010 (stating that the job includes receiving cash from customers in employees).

persistence, or pace.[20] He opined that Plaintiff should have not public contact and that she was limited to simple repetitive tasks.[21] Plaintiff's treating psychiatrist found marked difficulties in social functioning and with concentration, persistence, or pace.[22] Finally, Dr. Reed, the state agency medical consultant, found that Plaintiff could understand simple instructions but not detailed instructions.[23] Dr. Reed also opined that Plaintiff would do better without contact with the public.[24] It appears that most of the opinions from medical doctors found that Plaintiff should not have contact with the public. The ALJ's finding that Plaintiff could return to her past relevant work does not seem to take any of these opinions into account. Thus, it does not appear that the ALJ's finding that Plaintiff could return to her past relevant work is supported by substantial evidence.[25] Consequently, remand is necessary.

### B. Medical Testimony

Plaintiff also argues that the ALJ erred in not affording Plaintiff's treating psychiatrist's opinion controlling weight or alternatively in not giving deference to her opinion. The ALJ has a duty to consider all the medical opinions in the record and discuss the weight assigned to each opinion.[26] "A treating physician's opinion must be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

---

[20] *See* ALJ Decision, Doc. 10-1, p. 14.

[21] *Id.* at p. 17.

[22] *Id*. at p. 14.

[23] *Id.* at p. 18.

[24] *Id.*

[25] There also do not appear to be any specific findings regarding the physical and mental demands of Plaintiff's past jobs.

[26] *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014).

other substantial evidence in the record."[27] If the treating physician's opinion is not entitled to controlling weight, the ALJ still must determine what weight, if any, to assign to the opinion by considering the factors listed at 20 C.F.R. §§ 404.1527 and 416.927.[28] These factors include the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors.[29] The ALJ must give good reasons for the weight he assigns to the treating physician's opinion and must give specific, legitimate reasons if he completely rejects the opinion.[30] The ALJ is not required to expressly discuss each factor, but the reasons stated must be "sufficiently specific" to allow meaningful review.[31] Generally, the ALJ should give more weight to opinions from treating sources over the opinions of other medical professionals.[32] If a treating source opinion is not given controlling weight, it is still entitled to deference.[33]

Here, the ALJ stated that he gave little weight to Plaintiff's treating psychiatrist's opinion. In assigning little weight to the opinion, he simply stated that the opinion was inconsistent with the record as a whole. The ALJ did not note that a treating physician's opinion is generally entitled to controlling weight. The opinion also did not discuss any other factors for assigning little weight to the treating physician's opinion or in determining the amount of

---

[27] *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014) (internal quotation marks and citation omitted).

[28] *Id.* at 1176-77.

[29] 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

[30] *See Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003).

[31] *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (citing *Watkins*, 350 F.3d at 1300).

[32] 20 C.F.R. §§ 404.1527(c), 416.927(c).

[33] *Watkins*, 350 F.3d at 1300 (citing Soc. Sec. Ruling 96-2p., 1996 WL 374188, at *4 (July 2, 1996)).

deference given to the opinion. Although the ALJ need not formally and exhaustively review all of the factors concerning a medical opinion from a treating physician, the ALJ's decision should provide for meaningful review on the issue. Here, it does not. Accordingly, the Court finds that remand is necessary.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **REVERSED**, and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) **REMANDING** the case for further proceedings.

**IT IS SO ORDERED**.

Dated this 14th day of August, 2015.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE